# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLIFFORD JAMES SLEEPER,

        Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 337069
Ingham Circuit Court
LC No. 13-001113-FH

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted of six counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (person between 13 and 15 years of age). Defendant was originally sentenced to concurrent prison terms of 120 to 180 months. Defendant previously appealed his conviction and his sentence to this Court. *People v Sleeper*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2016 (Docket No. 323860). We affirmed defendant's convictions, but remanded for resentencing pursuant to *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015) (*Steanhouse I*), rev'd 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*). On remand, the trial court imposed the same sentence: concurrent prison terms of 120 to 180 months. Defendant again appeals as of right his sentences. We affirm.

## I. REASONABLENESS OF SENTENCES

In his brief on appeal, defendant first argues that the trial court improperly engaged in judicial fact-finding, and further imposed an unreasonable and disproportionate departure sentence. We disagree.

We first address defendant's judicial fact-finding argument. In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines violated the Sixth Amendment to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364. To correct this constitutional violation, our Supreme Court held that the guidelines were advisory only. *Id*. at 365.

-1-

As this Court explained in *People v Biddles*, 316 Mich App 145, 158; 896 NW2d 461 (2016),

> [t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory,* not by eliminating judicial fact-finding. [See also *People v Jackson*, 313 Mich App 409, 434; 884 NW2d 297 (2015) (emphasizing that "judicial fact-finding remains an important component of Michigan's sentencing scheme post-*Lockridge*.").]

Because the trial court was aware of the advisory nature of the sentencing guidelines, it did not err by evaluating defendant's sentences using a guidelines range based on judicially-found facts.

Second, defendant argues that the trial court imposed an unreasonable and disproportionate sentence when it upwardly departed from the minimum sentencing guidelines. This Court reviews departure sentences for reasonableness using the principle of proportionality articulated in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). See *People v Steanhouse*, 500 Mich 453, 471-472; 902 NW2d 327 (2017) (*Steanhouse II*). As this Court recently explained in *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331499); slip op at 16:

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is an abuse of discretion. [*Steanhouse II*, 500 Mich at 471.] In *Steanhouse*, the Michigan Supreme Court clarified that 'the relevant question for appellate courts reviewing a sentence for reasonableness' is 'whether the trial court abused its discretion by violating the principle of proportionality[.]' [*Id*.] The principle of proportionality is one in which
>
> > "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [[*Id*. at 472], quoting *Milbourn*, 435 Mich [at 651].]
>
> Under this principle, " '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " [*Steanhouse II*, 500 Mich at 472,] quoting *Milbourn*, 435 Mich at 661. [*Dixon-Bey*, ___ Mich App at ___; slip op at 16.]

The sentencing guidelines remain an "aid to accomplish the purposes of proportionality . . . ." *Id.* at ___; slip op at 18. The sentencing guidelines " 'provide objective factual guideposts that can assist sentencing courts in ensuring that the offenders with similar offense and offender characteristics receive substantially similar sentences.' " *Id.*, quoting *People v Smith*, 482 Mich 292, 309; 754 NW2d 284 (2008) (brackets omitted). Our Supreme Court has been clear that while the sentencing guidelines are now merely advisory, they "remain a highly relevant consideration in a trial court's exercise of sentencing discretion . . . ." *Lockridge*, 498 Mich at 391. See also *Steanhouse II*, 500 Mich at 474-475. As this Court recently explained:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, *People v Houston*, 448 Mich 312, 321-322; 532 NW2d 508 (1995), see also *Milbourn*, 435 Mich at 657, (2) factors not considered by the guidelines, *Houston*, 448 Mich at 322-324, see also *Milbourn*, 435 Mich at 660, and (3) factors considered by the guidelines but given inadequate weight, *Houston*, 448 Mich at 324-325, see also *Milbourn*, 435 Mich at 660 n 27. [*Dixon-Bey*, ___ Mich App at ___; slip op at 18-19.]

Other factors to consider "include 'the defendant's misconduct while in custody, *Houston*, 448 Mich at 323, the defendant's expressions of remorse, *id.*, and the defendant's potential for rehabilitation, *id.*' " *Dixon-Bey*, ___ Mich App at ___; slip op at 19 n 9, quoting *People v Steanhouse (Steanhouse I)*, 313 Mich App 1, 46; 880 NW2d 297 (2015).

In *Milbourn*, our Supreme Court observed:

> Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988). ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. *Too frequently reasons are given for a sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given.* Such was the case here.") (Emphasis added.) [*Milbourn*, 435 Mich at 659-660 (footnote omitted).]

Therefore, "[w]hen making this determination and sentencing a defendant, a trial court must ' "justify the sentence imposed in order to facilitate appellate review," ' *Steanhouse*, [500 Mich at 470], quoting *Lockridge*, 498 Mich at 392, which 'includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been,' *Smith*, 482 Mich at 311." *Dixon-Bey*, ___ Mich App at ___; slip op at 19.

Our first step in the reasonableness review is to determine whether there were " 'circumstances that are not adequately embodied within the [offense] variables used to score the guidelines.' " *Steanhouse III*, ___ Mich App at ___; slip op at 3, quoting *Milbourn*, 435 Mich at 659-660. Our analysis requires comparing "the stated reasons for exceeding the guidelines with the scored offense variables (OVs) to determine whether those reasons were already encompassed within the guidelines." *Steanhouse III*, ___ Mich App at ___; slip op at 3. The relevant inquiry becomes "whether the trial court abused its discretion by imposing a departure sentence without articulating whether the guidelines adequately took into account the conduct alleged to support the particular departure imposed." *Id*.

Defendant's minimum sentencing guidelines range was 51 to 85 months' imprisonment: the trial court sentenced defendant to 120 to 180 months' imprisonment for each of defendant's six CSC III convictions. In choosing to upwardly depart from the minimum sentencing guidelines range, the trial court considered the following factors: (1) defendant relentlessly pursued the victim, despite being told multiple times to stay away from her and to stop contacting her; (2) defendant engaged in more than the three penetrations scored under the sentencing guidelines, and committed another sexual assault on a different victim that could not be considered under the guidelines; (3) the vast age difference between the 8th grade victim and defendant who was in his late 30s; (4) defendant bragged about his sexual relationship with the victim; and (5) defendant had exploited and manipulated other minors by "providing them cigarettes, alcohol and marijuana," which was not considered by the guidelines, as the other minors are not considered victims.

Two of the five reasons given by the trial court for imposing a departure sentence had already been accounted for by the sentencing guidelines. First, defendant was assessed 15 points for offense variable (OV) 10, MCL 777.40, which considers predatory conduct against a vulnerable victim. In *People v Hudson*, 489 Mich 451, 457-468; 802 NW2d 261 (2011), our Supreme Court concluded:

> to assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." Again, MCL 777.40(3)(c) defines "vulnerability" as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this "susceptibility" be inherent in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well. [*Huston,* 489 Mich. at 466.]

Our Supreme Court further noted that MCL 777.40(3)(a) defines "predatory conduct" as "preoffense conduct directed at a victim, or law enforcement officer posing as a potential victim, for the primary purpose of victimization[.]" *Huston,* 489 Mich. at 459–460.

Here, defendant clearly engaged in predatory conduct directed at the victim for the sole purpose of victimization. For example, defendant purchased gifts for the victim, wrote their names on a railing at a park, and carved the victim's name into his arm. After the victim attempted to cut off contact with defendant, defendant repainted his racecar, changed the number

from one to three, which was the victim's favorite number, and painted the victim's name on the side of the car. Further, defendant used and exploited other minors for the sole purpose of making contact with the victim. Defendant purchased cigarettes, alcohol, and marijuana for other minors, and in exchange, they agreed to pass notes to the victim. Defendant offered other minors money if they could get the victim to agree to come to defendant's house. Defendant contacted other minors both in person and on social media. Based on defendant's extensive pursuit of the victim, we conclude that defendant's predatory behavior was given inadequate weight by the guidelines, and therefore, the extent of defendant's predatory behavior was appropriately considered by the trial court when departing from the minimum sentencing guidelines. *Dixon-Bey*, ___ Mich App at ___; slip op at 18-19.

Second, defendant was assessed 25 points for OV 13, MCL 777.43(1)(c), which considers whether the sentencing offense was part of a pattern of felonious criminal activity involving three or more crimes against a person. Accordingly, the fact that defendant penetrated the victim more than three times, and even engaged in a sexual relationship with another minor, was properly considered by OV 13, and was not a valid consideration by the trial court when determining whether to impose a departure sentence.

The remaining reasons articulated by the trial court were valid reasons to depart from the sentencing guidelines because the sentencing guidelines do not account for those factors, and they relate to the circumstances surrounding defendant and his crime. *Steanhouse I*, 313 Mich App at 46. Specifically, the trial court appropriately considered the fact that defendant chose to continue to pursue the victim even after the victim and her mother told him to stop, the fact that a large age gap existed between defendant and the victim, the fact that defendant consistently bragged about engaging in a sexual relationship with the victim, and the fact that victim considered defendant, who was a family friend, to be "like a father figure because [she] didn't have one."

We conclude that even absent the trial court's erroneous consideration of facts already properly considered by OV 13, it is clear from the record before us that the trial court would have departed from the minimum sentencing guidelines. Likewise, we conclude that the trial court adequately justified the extent of the departure sentence imposed. As this Court stated in *Steanhouse III*, "it is necessary for a trial court to articulate its reasons for [ ] imposing a departure sentence to permit appellate review of whether the court abided by the principle of proportionality." *Steanhouse III*, ___ Mich App at ___; slip op at 5, citing *Milbourn*, 435 Mich at 659-660. Given the reasoning articulated by the trial court, as well as the record before us, we cannot conclude that the extent of the departure was unreasonable, or that the trial court abused its discretion. *Steanhouse III*, ___ Mich App at ___; slip op at 5, quoting *Steanhouse II*, 500 Mich at 476.

## II. STANDARD 4 BRIEF

Defendant raises several arguments in his Standard 4 brief on appeal, including ineffective assistance of counsel, judicial bias, and evidentiary challenges to the scoring of OV 10 and OV 4. However, all of defendant's claims of error relate to his trial and first sentencing. The only claim raised by defendant pertaining to the events occurring after the remand are identical to the issues raised in his brief on appeal. This Court's review of defendant's second

appeal is limited by the scope of the remand. See *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975) and *People v Kincade (On Remand)*, 206 Mich App 477, 481; 522 NW2d 880 (1991) ("where an appellate court remands for some limited purpose following an appeal as of right in a criminal case, a second appeal as of right, limited to the scope of the remand, lies from the decision on remand.") Defendant could have raised his ineffective assistance of counsel, judicial bias, and evidentiary challenges to the scoring of his OVs in his previous appeal, but chose not to. Additionally, the errors cited by defendant in his Standard 4 brief on appeal that purportedly occurred on remand have been addressed *supra*.

This Court previously remanded this matter to the trial court pursuant to the procedures outlined in *Lockridge* and *Steanhouse I*. Because the issues raised by defendant on appeal after remand fall outside that scope, we decline to review them. *Jones*, 394 Mich at 435-436.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle